# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY RIVERA,<br><br>          Plaintiff,<br><br>    v.<br><br>DAVE DAVEY, et al.,<br><br>          Defendants. | Case No. 1:16-cv-01817-AWI-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>ORDER ON REQUEST TO APPOINT COUNSEL<br><br>(ECF No. 32)<br><br>**FOURTEEN (14) DAY DEADLINE** |

      Plaintiff Ricky Rivera is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

      This action was initiated on December 2, 2016. (ECF No. 1.) On November 22, 2017, the Court screened Plaintiff's complaint, found that he had failed to state any cognizable claim for relief, and granted him leave to amend within thirty days. (ECF No. 14.) Plaintiff failed to amend, and, on January 11, 2018, the Court issued findings and recommendations recommending dismissal of this action. (ECF No. 15.) After Plaintiff filed a motion seeking an extension of time to amend his complaint, on January 16, 2018, the Court vacated the findings and recommendations and granted Plaintiff an additional thirty days to file an amended complaint. (ECF Nos. 16, 17.) However, instead of filing a first amended complaint, on February 9, 2018, Plaintiff filed

objections, arguing that he had sufficiently pled a cognizable claim in his original complaint. (ECF No. 18.)

On March 22, 2018, the Court issued findings and recommendations stating that it had considered Plaintiff's objections, but nevertheless found that Plaintiff's complaint failed to allege any cognizable claim for relief. (ECF No. 19.) Therefore, the Court recommended that this action be dismissed and granted Plaintiff fourteen days to file objections to the findings and recommendations. (Id.) After Plaintiff filed a motion seeking an extension of time to file an amended complaint in compliance with the Court's November 22, 2017 screening order, on April 16, 2018, the Court vacated the findings and recommendations that it issued on March 22, 2018 and granted Plaintiff thirty days to file a first amended complaint. (ECF Nos. 20, 21.)

The Court screened the first amended complaint and following Plaintiff's multiple requests to extend time, Plaintiff's second amended complaint, filed on September 20, 2019, is currently before the Court for screening. (ECF No. 22.)

## I. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the

misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at California State Prison, Corcoran ("CSP-COR"), where the events detailed in the second amended complaint are alleged to have occurred. Plaintiff names the following defendants: (1) CSP-COR Warden Dave Davey; (2) Community Resource Manager M. Robicheaux; (3) Christian Chaplain Ed Crain;[1] and (4) S.M.V. Chapoleun, Catholic Priest.

Plaintiff alleges as follows: Plaintiff is Jewish since birth, by a Jewish mother. Plaintiff asserts that he is a member of the Aleph Institute, which was founded in 1981 by Rabbi Sholom D. Lipskar at the express direct of the Lubaritcher Rebbe. Further, Plaintiff alleges that all Defendants are, and have been aware, that Plaintiff has been a Jew since birth. Plaintiff's faith requires him to follow the religious prayers and rituals under the Jewish faith. Plaintiff's sincerely held religious belief is that Jewish religious practices be conducted in a room that does not contain a toilet or similar receptacle and the Mezuzah cannot be placed or hung on an entrance door to a restroom.

On June 23, 2014, Plaintiff arrived at CSP-COR, after being transferred from Wasco State Prison. However, from May 2014 through April 2016, Plaintiff's requests to practice his Jewish prayers and Jewish holy day events were repeatedly denied by Defendants Robicheaux, Crain, Chapoleun, and Davey. From July 2014 through November or December 2015, Defendant Chapoleun was employed as the CSP-COR chaplain. From November or December 2015 and then on, Defendant Crain replaced Defendant Chapoleun as the CSP-COR chaplain. Defendant Robicheaux was/is Defendants Chapoleun's and Crain's supervisor.

On May 18, 2014, June 1, 2014, July 10, 2014, September 23, 2014, September 30, 2014, October 4, 2014, October 6, 2014, October 11, 2014, October 12, 2014, December 12, 2014,

---

[1] Plaintiff refers to this Defendant both a "Cain" and "Crain" in the second amended complaint. The exhibits attached to the complaint identify this Defendant as "Crain," and therefore, the Court will adopt this spelling.

3

December 26, 2014, January 31, 2015, February 28, 2015, March 1, 2015, March 29, 2015, March 31, 2015, May 2, 2015, May 19, 2015, July 1, 2015, July 21, 2015, August 31, 2015, September 11, 2015, September 18, 2015, September 23, 2015, October 2, 2015, December 2, 2015, December 17, 2015, January 20, 2016, March 18, 2016, March 19, 2016, and on April 17, 2016, Plaintiff submitted separate Form 22 Inmate Request for Interview, Item or Service ("Form 22") requests to Defendant Robicheaux and either Defendants Chapoleun or Crain via the institutional mail, asking the Defendants to observe specific Jewish holy day ritual on July 17, 2014, August 5, 2014, September 25-26, 2014, September 23, 2014, September 28, 2014, September 30, 2014, October 4, 2014, October 9-17, 2014, December 12, 17-24, 2014, December 26, 2014, January 1, 2015, January 31, 2015, February 4, 2015, February 28, 2015, March 4-5, 2015, March 29, 2015, April 3-10, 2015, May 7, 2015, May 24-25, 2015, July 1, 2015, July 5, 2015, July 21, 2015, July 26, 2015, September 11, 2015, September 14-16, 2015, September 23, 2015, September 28-October 6, 2015, December 7-22, 2015, January 25, 2016, March 18, 23-24, 2016, and April 22, 2016. Each Form 22 request asked for space and time in the chapel and notified Defendants Robicheaux and Chapoleun or Crain to the fact that Plaintiff could not perform any holy day rituals in his prison cell because the holy day rituals cannot be performed in a room that contains a toilet or any other receptacle where a person is intended to urinate or defecate. Plaintiff suggested if the Chapel were not available, space in the gym or education room would suffice. Plaintiff's request to use the yard for his religious service was denied because Plaintiff and all STG-Surenos were subject to modified program during this period. However, Plaintiff never received a response to any of the Form 22s that he submitted between May 18, 2014 and April 17, 2016, in violation of Title 15. Further, on all the dates Plaintiff requested use of the Facility Chapel between July 15, 2014 and April 22, 2016, Plaintiff was denied access to the Facility Chapel or any other room without a toilet where he could perform a Jewish holy day ritual. Plaintiff alleges that Defendants Robicheaux and Chapoleun or Crain each individually denied him access to the Facility Chapel or any other room without a toilet where he could perform a Jewish holy day ritual. The denials were not reasonably related to legitimate penological interests because for two years he was substantially burdened in his practice.

On August 17, 2015, August 24, 2015, and November 21, 2015, Plaintiff sent Form 22 requests to Defendant Robicheaux, asking the Defendant to immediately assist him and rectify the continued denial and deprivation of his requested religious obligatory prayers and holy day events being conducted in the Chapel facility. However, Defendant Robicheaux failed to respond to Plaintiff's Form 22 requests and failed to assist Plaintiff in establishing a time and place to perform his obligatory Jewish prayers and holy day events in 2015 at the Facility Chapel.

In 2014 and/or 2015, Plaintiff made personal request to Defendant Crain and Chapoleun at the Chapel for time and space and/or a room without a toilet to allow him to conduct his Jewish Prayers/Rituals consistent with his religious beliefs. Both Defendant did not make any appropriate accommodations for Plaintiff. This was not reasonably related to legitimate penological interests.

On September 30, 2014, December 31, 2014, March 31, 2015, June 30, 2015, September 30, 2015, December 31, 2015, and March 31, 2016, Plaintiff submitted separate Form 22 requests to Defendant Davey, asking Defendant Davey to adopt a policy and procedure to rectify the denial of access to the Facility Chapel or other room without a toilet where Jewish holy day rituals could be performed. Plaintiff asserts that he never received any response to the Form 22s. No accommodations were made for Plaintiff's sincerely held religious beliefs and Defendant Davey's nonresponse was not reasonably related to a legitimate penological interest because a non response burdened Plaintiff's religious practice for a year.

However, on April 1, 2016, an unidentified man in plain clothes called Plaintiff for an interview regarding all of the Form 22s that Plaintiff had sent to Defendant Davey. The unidentified man, who Plaintiff identifies at DOE#1,[2] refused to give Plaintiff his name, had all of the Form 22s in his physical possession, and informed Plaintiff that he would only answer the Form 22s verbally so that no evidence that the conversation had occurred would exist. The unidentified man told Plaintiff that he was addressing Plaintiff's Form 22s on behalf of Defendant Davey, that Defendant Davey had actually read the Form 22s, and that Defendant Davey knowingly neglected to put a policy and procedure in place to prevent the deprivation of the rights of Jewish inmates to perform

---

[2] Plaintiff is informed that he has not named any DOE defendants in the caption of the second amended complaint or identified any DOE defendants in the list of defendants.

5

holy day rituals in a room without a toilet. DOE #1 also said that Defendant Davey admitted his failure to have a policy for Jewish inmates to exercise their beliefs was the reason Defendant Robicheaux, Chapoleun and Crain were not granting Plaintiff's requests. Plaintiff alleges that DOE #1 conceded that Defendant Davey "'admitted' he had a 'causal connection' of creating a custome of the absence of any policies or procedure to the point defendant Davey conceding that the doctrine of 'respondeat superior' does not immune Davey from civil liability were Plaintiff top ever file suit." (EDF 32 para 13)(unedited text).

On November 10, 2015, Plaintiff submitted a Form 602 administrative appeal, Log No. COR-15-06806, to Defendant Davey and "supervisor liability" for failure to train and supervise Defendants Robicheaux, Chapoleun, and Crain and for their continued intentional failure to comply with their agency's policies and give Plaintiff the same opportunity to perform his religious prayer services and holy day events that all other religious inmates were afforded. He challenged the lack of equal access to Chapel like other religions. Defendant Crain told Plaintiff that staff has been trained and have provided Plaintiff with the necessary items for his Jewish observation and that the Protestant Chaplain has been assigned to ensure Plaintiff was provided the same privileges and other religious groups. Plaintiff's appeal was granted as to food sales, but Plaintiff's appeal had nothing to do with food and providing religious artifacts. Plaintiff appealed. Non-Defendant Chief Deputy Warden Sexton granted Plaintiff's appeal of access to the Facility Chapel or a room without a toilet where Plaintiff could conduct his religious practice on or about March-April 2016. A policy was implemented in which Plaintiff and other Jewish inmates could conduct Jewish Rituals in a space which did not contain a toilet.

Plaintiff alleges that Defendant Davey, Ribocheaux, Chapoleun and Crain, intentionally discriminated against Plaintiff on the basis of his Jewish religion by failing to provide a reasonable opportunity to pursue his Jewish faith "compared to other similarly situated religious groups of Christians, Islamic, Buddhist, Catholic, and Kemectic, inmates faiths." Plaintiff alleges that these defendants treatment of Plaintiff and their treatment of all other similarly situated inmates of Christina, Islamic, Buddhist, Catholic, and Kemectic faiths is not reasonably related to legitimate penological interest or goals.

6

At an unknown date, Defendant Davey developed an institutional policy and procedure to allow Jewish inmates to use the Facility Chapel and, after April 22, 2016, Plaintiff was authorized to utilize the Facility Chapel in order to perform all of his Jewish holy day rituals.

As relief, Plaintiff seeks compensatory and punitive damages.

## III. Discussion

### A. First Amendment – Free Exercise of Religion

"Inmates ... retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in Malik determines whether the Free Exercise Clause applies).

However, "a prisoner's right to free exercise of religion 'is necessarily limited by the fact of incarceration.'" Jones v. Williams, 791 F.3d 1023, 1032 (9th Cir. 2015) (citation omitted). "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" Id. (quoting O'Lone, 482 U.S. at 349.) "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.'" Id. (quoting O'Lone, 482 U.S. at 349). "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of [his] religion." Jones, 791 F.3d at 1031; Shakur, 514 F.3d at 884-85. If the inmate makes his initial showing of a sincerely held religious belief, he must establish that prison officials substantially burden the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Shakur, 514 F.3d at 884-85. "[T]he availability of alternative means of practicing religion is a relevant consideration" for claims under the First Amendment. Holt v. Hobbs, 574 U.S. 352, 135 S. Ct. 853, 862 (2015).

7

Here, Plaintiff alleges that his First Amendment right to free exercise of religion was violated at CSP-COR from May 2014 through April 2016 because Defendants Ribocheaux, Chapoleun and Crain prohibited Plaintiff from conducting Jewish prayers and Jewish holy day rituals in the Facility Chapel or any another room despite his a sincerely held religious belief that Jewish prayers are to be conducted in a room that does not contain a toilet or any other receptacle where a person is intended to urinate and/or defecate. Liberally construing the facts in Plaintiff's favor, which the Court must do at the pleading stage, Plaintiff has stated a cognizable claim for a violation of his First Amendment right to free exercise of religion against Defendants Ribocheaux, Chapoleun and Crain.

### C. Fourteenth Amendment – Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985) (citation omitted). To state a claim under the Equal Protection Clause, Plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Cruz v. Beto, 405 U.S. 319, 321-22 (1972); Shakur, 514 F.3d at 891.

Here, Plaintiff asserts that, while he requested and was denied access to the Facility Chapel in order to practice his obligatory Jewish prayers and holy day rituals on numerous occasions from May 2014 through April 2016, all other inmates of the Christian, Islamic, Catholic, Buddhist, and Kemectic services were afforded their obligatory religious services at the Facility Chapel from May 2014 through April 2016. However, Plaintiff's second amended complaint includes fewer factual allegations about treatment of other religious groups than his first amended complaint. Plaintiff's allegations are conclusory and unsupported by any factual allegations demonstrating that he is not similarly situated or treated as all other inmates of the Christian, Islamic, Catholic, Buddhist, and Kemectic faiths. Therefore, Plaintiff has not alleged a cognizable claim for a violation of his Fourteenth Amendment right to equal protection. Despite being provided leave to amend and the

applicable legal standards, Plaintiff has been unable to cure the deficiencies.

**D.    Supervisor Liability**

Insofar as Plaintiff is attempting to sue Defendant Warden Davey, or any other defendant, based on his or her supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir.2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

Plaintiff alleges that Defendant Davey is liable for failure to train and supervise Defendants Ribocheaux, Chapoleun and Crain who did not follow and comply with policy to give Plaintiff the same opportunity to perform his religious prayer services that all other religious inmates were afforded.  A supervisor's failure to train or supervise subordinates may give rise to individual liability under § 1983 where the failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact. See Canell v. Lighner, 143 F.3d 1210, 1213-14 (9th Cir. 1998). To impose liability under a failure to train theory, a plaintiff must allege sufficient facts that the subordinate's training was inadequate, the inadequate training was a deliberate choice on the part of the supervisor, and the inadequate training caused a constitutional violation. Id. at 1214; see also City of Canton v. Harris, 489 U.S. 378, 391 (1989); Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (to establish failure to train, a plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for more or different

training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers … can reasonably be said to have been deliberately indifferent to the need." (citation and internal quotation marks omitted)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citation omitted).

Here, while Plaintiff asserts that Defendant Davey had a duty to ensure that subordinate staff were properly trained and supervised, Plaintiff has not alleged facts demonstrating that any named subordinate Defendant's training or supervision was inadequate, that the inadequate training was a deliberate choice on Defendant Davey's part, and that the inadequate training caused the violation of Plaintiff's constitutional rights. Indeed, Plaintiff acknowledges that Defendant Crain told Plaintiff that employees were adequately trained with the necessary items for his Jewish observation. Therefore, Plaintiff's conclusory allegations fail to state a cognizable supervisory liability claim for failure to train or supervise subordinate employees against Defendant Davey. Leave to amend should not be granted as to this claim because Plaintiff was admonished in the prior screening order that he could not change the claims alleged.

Plaintiff states a cognizable claim against Defendant Davey for a deficient policy that violates his constitutional right to free exercise of religion and was the moving force for the violation. Plaintiff alleges there was no institutional policy and procedure to allow Jewish inmates to use the Facility Chapel, space in the gym or education room, which prevented Jewish inmates from performing holy day rituals in a room without a toilet. The deficient policy denied access to the Facility Chapel or other suitable area in order to practice his obligatory Jewish prayers and holy day rituals on numerous occasions from May 2014 through April 2016 and this denial substantially burdened Plaintiff's ability to perform his religious rituals. Accepting the allegations as true, as the Court must at this stage of the proceeding, Defendant Davey was aware of the failure to implement policies, that he ratified or caused the failure, and that his inaction and omissions was the moving force of the alleged constitutional violations regarding Plaintiff's religious practices.

**IV.     Request for Appointment of Counsel**

Plaintiff does not have a constitutional right to appointed counsel in this action, Rand v.

10

Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), rev'd in part on other grounds, 154 F.3d 952, 954 n.1 (9th Cir. 1998), and the court cannot require an attorney to represent plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). Rand, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, a district court must evaluate both the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted).

The Court has considered Plaintiff's request, but does not find the required exceptional circumstances. Even if it is assumed that Plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. This Court is faced with similar cases filed by prisoners who are proceeding *pro se* and *in forma pauperis* almost daily. These prisoners also must conduct legal research and prosecute claims without the assistance of counsel.

Furthermore, at this stage in the proceedings, the Court cannot make a determination that Plaintiff is likely to succeed on the merits. Plaintiff's complaint has been screened and while it states a claim for relief, based on a review of the record in this case, the Court does not find that Plaintiff cannot adequately articulate his claims.

**V.      Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's complaint states a cognizable claim against Defendants Ribocheaux, Chapoleun and Crain for violation of Plaintiff First Amendment, Free Exercise of Religion; and against Defendant Davey for a deficient policy that violates Plaintiff's constitutional right to Free Exercise of Religion, but fails to state any other cognizable claim for relief. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the remaining deficiencies and further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. This action proceed on Plaintiff's second amended complaint, filed on September 20, 2019, against Defendants Ribocheaux, Chapoleun and Crain for violation of Plaintiff First Amendment, Free Exercise of Religion;

2. And against Defendant Davey for a deficient policy that violates Plaintiff's constitutional right to Free Exercise of Religion; and

3. All other claims and defendants be dismissed from this action based on Plaintiff's failure to state claims upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 11, 2020**  /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE