1
2
3
4
5
6
7                           UNITED STATES DISTRICT COURT
8                           EASTERN DISTRICT OF CALIFORNIA
9

10   RICKY RIVERA,                          Case No.: 1:16-cv-01817-AWI-BAM (PC)

11              Plaintiff,                   FINDINGS AND RECOMMENDATION TO
                                             DISMISS ACTION, WITHOUT PREJUDICE,
12        v.                                 FOR FAILURE TO EXHAUST
                                             ADMINISTRATIVE REMEDIES
13   DAVE DAVEY, et al.,
                                             (ECF No. 52)
14              Defendants.
                                             **FOURTEEN (14) DAY DEADLINE**
15

16        Plaintiff Ricky Rivera is a state prisoner proceeding *pro se* and *in forma pauperis* in this

17   civil action pursuant to 42 U.S.C. § 1983. On August 7, 2020, Defendants Crain, Davey,

18   Robicheaux filed a motion to dismiss on the ground that Plaintiff failed to exhaust all available

19   administrative remedies before filing suit.  (ECF No. 52.)  Plaintiff filed an opposition to the

20   motion on September 20, 2020.  (ECF No. 56.)  Defendants filed a reply brief on September 17,

21   2020.  (ECF No. 57.)  The motion is deemed submitted. Local Rule 230(l).

22   **I.      Summary of Second Amended Complaint**

23        Plaintiff names the following defendants: (1) CSP-COR Warden Dave Davey; (2)

24   Community Resource Manager M. Robicheaux; (3) Christian Chaplain Ed Crain;[1] and (4) S.M.V.

25   Chapoleun,[2] Catholic Priest.

26   _____

27   [1] Plaintiff refers to this Defendant both a "Cain" and "Crain" in the second amended complaint. The exhibits attached
     to the complaint identify this Defendant as "Crain," and therefore, the Court will adopt this spelling.

28   [2] Defendant Chapoleun was dismissed on August 20, 2020 from this action, without prejudice, for failure to serve
     process under Federal Rule of Civil Procedure 4(m).  (Doc. 53.)

Plaintiff alleges as follows: Plaintiff is Jewish since birth, by a Jewish mother.  Plaintiff asserts that he is a member of the Aleph Institute, which was founded in 1981 by Rabbi Sholom D. Lipskar at the express direct of the Lubaritcher Rebbe.  Further, Plaintiff alleges that all Defendants are, and have been aware, that Plaintiff has been a Jew since birth.  Plaintiff's faith requires him to follow the religious prayers and rituals under the Jewish faith.  Plaintiff's sincerely held religious belief is that Jewish religious practices be conducted in a room that does not contain a toilet or similar receptacle and the Mezuzah cannot be placed or hung on an entrance door to a restroom.

On June 23, 2014, Plaintiff arrived at CSP-COR, after being transferred from Wasco State Prison.  However, from May 2014 through April 2016, Plaintiff's requests to practice his Jewish prayers and Jewish holy day events were repeatedly denied by Defendants Robicheaux, Crain, Chapoleun, and Davey. From July 2014 through November or December 2015, Defendant Chapoleun was employed as the CSP-COR chaplain.  From November or December 2015 and then on, Defendant Crain replaced Defendant Chapoleun as the CSP-COR chaplain.  Defendant Robicheaux was/is Defendants Chapoleun's and Crain's supervisor.

On May 18, 2014, June 1, 2014, July 10, 2014, September 23, 2014, September 30, 2014, October 4, 2014, October 6, 2014, October 11, 2014, October 12, 2014, December 12, 2014, December 26, 2014, January 31, 2015, February 28, 2015, March 1, 2015, March 29, 2015, March 31, 2015, May 2, 2015, May 19, 2015, July 1, 2015, July 21, 2015, August 31, 2015, September 11, 2015, September 18, 2015, September 23, 2015, October 2, 2015, December 2, 2015, December 17, 2015, January 20, 2016, March 18, 2016, March 19, 2016, and on April 17, 2016, Plaintiff submitted separate Form 22 Inmate Request for Interview, Item or Service ("Form 22") requests to Defendant Robicheaux and either Defendants Chapoleun or Crain via the institutional mail, asking the Defendants to observe specific Jewish holy day ritual on July 17, 2014, August 5, 2014, September 25-26, 2014, September 23, 2014, September 28, 2014, September 30, 2014, October 4, 2014, October 9-17, 2014, December 12, 17-24, 2014, December 26, 2014, January 1, 2015, January 31, 2015, February 4, 2015, February 28, 2015,  March 4-5, 2015, March 29, 2015, April 3-10, 2015, May 7, 2015, May 24-25, 2015, July 1, 2015, July 5,

2

2015, July 21, 2015, July 26, 2015, September 11, 2015, September 14-16, 2015, September 23, 2015, September 28-October 6, 2015, December 7-22, 2015, January 25, 2016, March 18, 23-24, 2016, and April 22, 2016. Each Form 22 request asked for space and time in the chapel and notified Defendants Robicheaux and Chapoleun or Crain to the fact that Plaintiff could not perform any holy day rituals in his prison cell because the holy day rituals cannot be performed in a room that contains a toilet or any other receptacle where a person is intended to urinate or defecate. Plaintiff suggested if the Chapel were not available, space in the gym or education room would suffice. Plaintiff's request to use the yard for his religious service was denied because Plaintiff and all STG-Surenos were subject to modified program during this period. However, Plaintiff never received a response to any of the Form 22s that he submitted between May 18, 2014 and April 17, 2016, in violation of Title 15. Further, on all the dates Plaintiff requested use of the Facility Chapel between July 15, 2014 and April 22, 2016, Plaintiff was denied access to the Facility Chapel or any other room without a toilet where he could perform a Jewish holy day ritual. Plaintiff alleges that Defendants Robicheaux and Chapoleun or Crain each individually denied him access to the Facility Chapel or any other room without a toilet where he could perform a Jewish holy day ritual. The denials were not reasonably related to legitimate penological interests because for two years he was substantially burdened in his practice.

On August 17, 2015, August 24, 2015, and November 21, 2015, Plaintiff sent Form 22 requests to Defendant Robicheaux, asking the Defendant to immediately assist him and rectify the continued denial and deprivation of his requested religious obligatory prayers and holy day events being conducted in the Chapel facility. However, Defendant Robicheaux failed to respond to Plaintiff's Form 22 requests and failed to assist Plaintiff in establishing a time and place to perform his obligatory Jewish prayers and holy day events in 2015 at the Facility Chapel.

In 2014 and/or 2015, Plaintiff made personal requests to Defendant Crain and Chapoleun at the Chapel for time and space and/or a room without a toilet to allow him to conduct his Jewish Prayers/Rituals consistent with his religious beliefs. Both Defendant did not make any appropriate accommodations for Plaintiff. This was not reasonably related to legitimate penological interests.

On September 30, 2014, December 31, 2014, March 31, 2015, June 30, 2015, September 30, 2015, December 31, 2015, and March 31, 2016, Plaintiff submitted separate Form 22 requests to Defendant Davey, asking Defendant Davey to adopt a policy and procedure to rectify the denial of access to the Facility Chapel or other room without a toilet where Jewish holy day rituals could be performed.  Plaintiff asserts that he never received any response to the Form 22s. No accommodations were made for Plaintiff's sincerely held religious beliefs and Defendant Davey's nonresponse was not reasonably related to a legitimate penological interest because a non response burdened Plaintiff's religious practice for a year.

However, on April 1, 2016, an unidentified man in plain clothes called Plaintiff for an interview regarding all of the Form 22s that Plaintiff had sent to Defendant Davey.  The unidentified man, who Plaintiff identifies at DOE#1,[3] refused to give Plaintiff his name, had all of the Form 22s in his physical possession, and informed Plaintiff that he would only answer the Form 22s verbally so that no evidence that the conversation had occurred would exist.  The unidentified man told Plaintiff that he was addressing Plaintiff's Form 22s on behalf of Defendant Davey, that Defendant Davey had actually read the Form 22s, and that Defendant Davey knowingly neglected to put a policy and procedure in place to prevent the deprivation of the rights of Jewish inmates to perform holy day rituals in a room without a toilet. DOE #1 also said that Defendant Davey admitted his failure to have a policy for Jewish inmates to exercise their beliefs was the reason Defendant Robicheaux, Chapoleun and Crain were not granting Plaintiff's requests.  Plaintiff alleges that DOE #1 conceded that Defendant Davey "'admitted' he had a 'causal connection' of creating a custom of the absence of any policies or procedure to the point defendant Davey conceding that the doctrine of 'respondeat superior' does not immune Davey from civil liability were Plaintiff top ever file suit."  (EDF 32 para 13)(unedited text).

On November 10, 2015, Plaintiff submitted a Form 602 administrative appeal, Log No. COR-15-06806, to Defendant Davey and "supervisor liability" for failure to train and supervise Defendants Robicheaux, Chapoleun, and Crain and for their continued intentional failure to

---

[3] Plaintiff is informed that he has not named any DOE defendants in the caption of the second amended complaint or identified any DOE defendants in the list of defendants.

1   comply with their agency's policies and give Plaintiff the same opportunity to perform his

2   religious prayer services and holy day events that all other religious inmates were afforded.  He

3   challenged the lack of equal access to Chapel like other religions.  Defendant Crain told Plaintiff

4   that staff has been trained and has provided Plaintiff with the necessary items for his Jewish

5   observation and that the Protestant Chaplain has been assigned to ensure Plaintiff was provided

6   the same privileges and other religious groups. Plaintiff's appeal was granted as to food sales, but

7   Plaintiff's appeal had nothing to do with food and providing religious artifacts.  Plaintiff

8   appealed.  Non-Defendant Chief Deputy Warden Sexton granted Plaintiff's appeal of access to

9   the Facility Chapel or a room without a toilet where Plaintiff could conduct his religious practice

10  on or about March-April 2016.  A policy was implemented in which Plaintiff and other Jewish

11  inmates could conduct Jewish Rituals in a space which did not contain a toilet.

12      Plaintiff alleges that Defendant Davey, Ribocheaux, Chapoleun and Crain, intentionally

13  discriminated against Plaintiff on the basis of his Jewish religion by failing to provide a

14  reasonable opportunity to pursue his Jewish faith "compared to other similarly situated religious

15  groups of Christians, Islamic, Buddhist, Catholic, and Kemectic, inmates faiths."  Plaintiff alleges

16  that these defendants treatment of Plaintiff and their treatment of all other similarly situated

17  inmates of Christina, Islamic, Buddhist, Catholic, and Kemectic faiths is not reasonably related to

18  legitimate penological interest or goals.

19      At an unknown date, Defendant Davey developed an institutional policy and procedure to

20  allow Jewish inmates to use the Facility Chapel and, after April 22, 2016, Plaintiff was authorized

21  to utilize the Facility Chapel in order to perform all of his Jewish holy day rituals.

22      Following screening the second amended complaint, Plaintiff was allowed to proceed on

23  Plaintiff's second amended complaint, filed on September 20, 2019, (ECF No. 32), against

24  Defendants Robicheaux, Chapoleun, and Crain for violations of the Free Exercise Clause of the

25  First Amendment and against Defendant Davey for a deficient policy that violates the Free

26  Exercise Clause of the First Amendment.

27  ///

28  ///

5

1    **II.     Legal Standard**

2         **A.  Motion to Dismiss**

3         Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

4    the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion

5    to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*,

6    250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material

7    fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v.*

8    *Liberty Mut. Ins. Co*., 80 F.3d 336, 337–38 (9th Cir. 1996). The pleading standard under Rule 8

9    of the Federal Rules of Civil Procedure does not require " 'detailed factual allegations,' but it

10   demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." *Ashcroft v.*

11   *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

12   (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be

13   accepted as true. *Iqbal*, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a

14   cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. To avoid a

15   dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that

16   is plausible on its face." *Twombly*, 550 U.S. at 570.

17        **B.  Exhaustion Requirement**

18             **1.    Statutory Exhaustion Requirement**

19        Under the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with

20   respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

21   confined in any jail, prison, or other correctional facility until such administrative remedies as are

22   available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement "applies to

23   all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152

24   L.Ed.2d 12 (2002), regardless of the relief sought by the prisoner or the relief offered by the

25   process, *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

26   Unexhausted claims must be dismissed. See *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910, 166

27   L.Ed.2d 798 (2007). A prison's own grievance process, not the PLRA, determines how detailed a

28   grievance must be to satisfy the PLRA exhaustion requirement. Id. at 218, 127 S.Ct. 910. The

administrative remedy process of the California Department of Corrections and Rehabilitation ("CDCR") is applicable here. See Cal. Code of Regs. tit. 15, § 3084. To exhaust available remedies during the relevant time period, an inmate must proceed through three formal levels of review unless otherwise excused under the regulations. Id. § 3084.1(b). Cancellation or rejection of a grievance does not exhaust administrative remedies. Id.

A defendant may raise the issue of administrative exhaustion in cases where failure to exhaust is obvious from the face of the complaint. *Albino v. Baca,* 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc). Motions to dismiss under Rule 12(b)(6) are only appropriate "in those rare cases where a failure to exhaust is clear from the face of the complaint." *Albino*, 747 F.3d. at 1169. If the Court concludes that Plaintiff has failed to exhaust available remedies, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(a). See *Jones*, 549 U.S. at 223-24; *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Here, Defendants contend that it is clear from the face of the operative second amended complaint that Plaintiff Ricky Rivera failed to exhaust all available administrative remedies before filing suit.

**2.      California Department of Corrections and Rehabilitation ("CDCR") Administrative Remedy Process**

At the relevant time of the allegations in the Second Amended Complaint, the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15 § 3084.1(a). The process is initiated by submitting a CDCR Form 602 ("602 form"). *Id.* at § 3084.2(a). Three levels of appeal are involved, including the first level, second level, and third level. *Id.* at § 3084.7. The third level of review exhausts administrative remedies. *Id*. at § 3084.7(d)(3).

In 2015-16, when Plaintiff was submitting the appeal at issue, the regulations required the prisoner to, among other things, "list all staff member(s) involved and...describe their involvement in the issue"; "include the staff member's last name, first initial, title or position, if

7

1  known, and the dates of the staff member's involvement in the issue"; and "state all facts known

2  and available to him/her regarding the issue being appealed at the time of submitting the" 602

3  form. Cal. Code Regs., tit. 15 § 3084.2(a)(1)-(4). In order to satisfy § 1997e(a), California state

4  prisoners are required to use this process to exhaust their claims prior to filing suit. *Woodford v.*

5  *Ngo,* 548 U.S. 81, 85, 126 S.Ct. 2378 (2006); *McKinney v. Carey*, 311 F.3d. 1198, 1199–1201 (9th

6  Cir. 2002).

### 3.   Grievance Filed by Plaintiff

8         In his second amended complaint filed on September 20, 2019, Plaintiff asserted that he

9  filed an appeal or 602 grievance concerning all of the facts contained in his complaint and that the

10  process was complete. (ECF No. 32, p. 2.) Plaintiff attached a copy of the underlying

11  administrative appeal documents to his second amended complaint.  (See ECF No. 32, p. 38.)

12  The grievance, with log number CSP-Corcoran-15-6806, asserted Warden Davey's "failure to

13  train, supervise, and instruct his subordinate" Robicheaux and Crain, and requested that he was

14  not timely provided the requested Jewish religious services since arriving at Corcoran.   (ECF No.

15  32, p. 38, 40.)  The 602 grievance was signed by Plaintiff and dated November 10, 2015.

16         Grievance CSP-Corcoran-15-6806 was initially screened out on November 19, 2015

17  because Plaintiff had failed to attach a form (CDCR Form 22) which Plaintiff had referred to in

18  the grievance description.  (ECF No. 32, p.40.)  Plaintiff was directed to submit the Form 22 to

19  the community resource manager.  (*id.*)  Plaintiff re-submitted the grievance for review, noting

20  that he had followed the instructions, submitted a CDCR 22 to CRM Robicheaux, received a

21  response on December 22, 2015, and attached the form. (ECF No. 32,  pp. 42, 43 (The submitted

22  Form 22 states: "since I came to Corcoran, I have not received nothing I requested about my

23  Jewish services.").)  A response was provided by Defendant Crain on December 15, 2015, that

24  Plaintiff would be receiving ducats for certain dates and that a rabbi would be coming to talk to

25  Plaintiff. (ECF No. 32,  p. 43.)  Plaintiff responded that he was dissatisfied with Defendant

26  Crain's response (ECF No. 32, p. 43 ("dissatisfied with the above staff response")), and on

27  December 22, 2015, Defendant Robicheaux responded to Plaintiff that she would talk with the

28  Chaplain to see if they could accommodate his request.  (ECF No. 32,  p. 43.)

Plaintiff resubmitted his grievance and it was accepted at the first level on December 31, 2015. (ECF No. 32,  p. 38.) Defendant Crain interviewed Plaintiff and both Crain and Robicheaux issued a first level response. (ECF No. 32,  pp. 38, 47.)  On January 15, 2016, the formal response at the first level noted that Plaintiff able to conduct his services in a smaller room at the Chapel, was provided candles for worship, met with the Catholic Caplin, and that the Protestant Chaplin was assigned to sponsor the Jewish population and to assist with religious needs. Plaintiff's appeal was granted at the first level.  (ECF No. 32, p. 47.)

Plaintiff was dissatisfied with the first level response and appealed to the second level.  In his second amended complaint, Plaintiff acknowledges that he was dissatisfied with the response. (ECF No. 32, ¶¶15-16.) In fact, Plaintiff appealed the first level response to the second level. (ECF No. 32, ¶16 and p. 39 ("Petitioner objects to the above First Level Reviewer's Response".)) The appeal was initially screened out and rejected at the second level because Plaintiff had failed to sign "Section D."  (ECF No. 32, p. 45 ('Your appeal was received without signature in section D. You must correct this issue prior to resubmission").)  Plaintiff resubmitted and the appeal was accepted for review at the second level on February 4, 2016.  (ECF No. 32, p. 39.)  Chief Deputy Warden Sexton responded at the second level on March 7, 2016, indicating that Plaintiff had been interviewed by Defendant Crain, and that services had been provided in response to the first level. *Id.* The response at the second level also stated that on December 6, 7, 8, and 9 candles and lighter for religious services were provided, but no services were provided on December 10 and 11 because a weapon had been discovered in the facility, and the facility was placed on modified program.  (ECF No. 32, p. 48.) The second level response also stated that "in regards to training, the Warden has not failed to train, supervise, and instruct the Community Resource Manager, [or] Protestant and Catholic Chaplain, [because] training is required and provided on a continual basis." *Id.* The second level of review "partially granted" Plaintiff's grievance and noted that "[i]f you are dissatisfied with the decision, you may appeal to the Third Level."  *Id.*

On March 29, 2016, Plaintiff filed an appeal to the Third Level.  (ECF No. 32, p. 39.). Plaintiff stated: "Petitioner objects to the above second level response alleging that the requested religious obligatory services were not provided timely as required by Jewish faith guidelines." *Id.*

9

The Office of Appeal screened out Plaintiff's appeal on July 6, 2016 because it was missing supporting documentation. (ECF No. 32, p. 49.)  Plaintiff did not resubmit the appeal for the third level review.  (See ECF No. 32, p. 39 that Section G is not completed with only the submission date of July 6, 2016 in Section G.)

**III.   Discussion**

### A.  Parties' Arguments

#### 1.  Defendants' Arguments

Defendants argue that action is barred because Rivera failed to exhaust his grievance by obtaining a decision on the merits at the third and final level of administrative review. Rivera's appeal to the third level of review is insufficient to exhaust because the appeal was screened out and never was accepted for review. Plaintiff's failure to obtain a decision on the merits at the third level of review renders his claims unexhausted.

#### 2.  Plaintiff's Arguments

Plaintiff argues that the prison's purported grant of his grievance at the first level of review exhausts his claims and he does not have to exhaust his appeal further.  (Opposition p. 5-6.)  He also argues that because he got what he wanted, after the second level and when the facility returned to normal after the modified program, he has exhausted his claims.  Plaintiff argues he was "not dissatisfied with the decision" at the second level, because he received all he had requested once he was returned to normal programming.

### B.  Analysis

#### 1.  The First Level did not Exhaust Remedies

Plaintiff argues that the first level of review satisfied his concerns and that no further exhaustion was required.  The Court disagrees because the documents attached to the second amended complaint demonstrate that Plaintiff was not satisfied by the response to the first level of review.  In Plaintiff's appeal of the first level response to the second level, Plaintiff stated:

> "Petitioner objects to the above first level reviewer's response as being untrue and incorrect. Petitioner has not received any of the requested religious artifacts nor services mentioned in section A."

10

1   (ECF No. 32, p. 30.)  Thus, while Plaintiff argues that he was satisfied and has exhausted his

2   remedies at the first level, he was in fact objecting to the first level response and was dissatisfied

3   with the response.  Thereafter, Plaintiff appealed to the second level of review on January 26,

4   2016.  Therefore, the grant at the first level of review did not exhaust Plaintiff's administrative

5   remedies because Plaintiff was dissatisfied with the first level response.[4]

6               **2.   The Second Level did not Exhaust Remedies**

7        Plaintiff also argues that the partial grant of relief at the second level of review and his

8   return to normal programming gave him what he wanted, thus exhausting remedies.  The Court

9   again disagrees because the documents attached to the second amended complaint demonstrate

10  that Plaintiff was not satisfied by the response to the second level of review.  In Plaintiff's appeal

11  of the second level response to the third level, Plaintiff stated:

12       "Petitioner objects to the above second level response alleging that the requested
         religious obligatory services were not provided timely as required by Jewish faith
13       guidelines."

14  (ECF No. 32, p. 39.) While Plaintiff argues that he was satisfied and thus exhausted his remedies

15  at the second level, he was in fact objecting to the second level response and was dissatisfied with

16  the response.  The partial grant at the second level of review did not exhaust Plaintiff's

17  administrative remedies because Plaintiff was dissatisfied with the second level response.

18  Thereafter, Plaintiff submitted an appeal to the third level of review on March 29, 2016.

19              **3.   The Third Level did not Exhaust Remedies**

20       Plaintiff argues that because he got what he wanted after the second level and when the

21  facility returned to normal after the modified program, he therefore has exhausted his claims.

22  (Opposition p. 7-8.) The documents attached to the second amended complaint show that Plaintiff

23  attempted to appeal to the third level of review.  The appeal at the third level was screened out

24  _____

25  [4]  The Court address Plaintiff's argument that Plaintiff was "satisfied" even though it is not legally relevant.
     California's regulations require a third-level decision to exhaust. Cal. Code Regs. tit. 15, § 3084.1(b) ("all appeals are
26   subject to a third level of review . . . before administrative remedies are deemed exhausted.") Regardless of the relief
     sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy
27   remains available. "The obligation to exhaust 'available' remedies persists as long as some remedy remains
     'available.' Once that is no longer the case, then there are no 'remedies...available,' and the prisoner need not further
     pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis and alteration in original) (citing
28   *Booth v. Churner*, 532 U.S. 731, 736 (2001)).

1   and not resubmitted by Plaintiff for further review.

2         Plaintiff's documents demonstrate that Plaintiff did not get "what he wanted at the second

3   level." In the second amended complaint, Plaintiff alleges wrongful conduct, in March and April

4   2016, which is after the second level response. Plaintiff could not have been "satisfied" with the

5   second level response, because he alleges wrongful conduct which occurred after the second level

6   response.  (See Doc. 32, ¶¶ 6-7.)  Thus, there were remedies available after the second level

7   appeal response in March 2016 because Plaintiff alleges ongoing wrongful conduct.  Thereafter,

8   when he filed his appeal at the third level, his appeal was screened out at the third level and was

9   not resubmitted to the third level.  Indeed, the entirety of Plaintiff's second amended complaint

10   complains of failure to accommodate his religious services and beliefs on numerous dates

11   throughout 2015-2016, which indicates he was not satisfied with the decision at the first level or

12   the second level or that he "got all that he wanted."  Further, because the second level of review

13   denied his appeal that the Warden failed to properly train subordinates, Plaintiff did not get all

14   that he wanted.  (ECF No. 32, p. 48.)  Therefore, Plaintiff did not fully exhaust through the third

15   level, and there were remedies available at the third level which Plaintiff did not pursue.

16   Accordingly, Plaintiff has failed to fully exhaust his administrative remedies through the third

17   level of review.

18         **C.  Grievance Against Warden Davey**

19         Defendant Warden Davey argues he is entitled to dismissal because Plaintiff's grievance

20   is not factually sufficient to exhaust claims against the Warden.

21         In light of the Court finding that Plaintiff failed to exhaust his administrative remedies

22   through the third level when remedies remained available, the Court need not and does reach this

23   argument.

24   **IV.   Conclusion and Recommendation**

25         Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion to

26   dismiss for failure to exhaust administrative remedies, filed on August 7, 2020, be GRANTED.

27         These Findings and Recommendations will be submitted to the United States District

28   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

1   **fourteen (14) days** after being served with these Findings and Recommendations, the parties may

2   file written objections with the Court.  The document should be captioned "Objections to

3   Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

4   objections within the specified time may result in the waiver of the "right to challenge the

5   magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014)

6   (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

7

8   IT IS SO ORDERED.

9      Dated:   **February 25, 2021**              /s/ *Barbara A. McAuliffe*

10                                              UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28